UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT J. HIMEBAUGH,

    Plaintiff,

vs.                                            CIVIL NO.: 05-CV-73667-DT

COMMISSIONER OF                  HON. ARTHUR J. TARNOW
SOCIAL SECURITY,                  MAG. JUDGE WALLACE CAPEL, JR.

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**I.    RECOMMENDATION**

It is recommended that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB]. Plaintiff protectively filed for benefits on April 30, 2003,[1] alleging that he has been disabled and unable to work since June 3, 2002, due to problems with his spine, left shoulder, and osteoarthritis in his lower back. (TR 47-50, 73). The Social Security Administration [SSA] denied benefits initially on September 12, 2003. (TR 13-18). A de novo hearing was held on January 31, 2005, before Administrative Law Judge [ALJ] Allen Jonas. (TR 282-306). In a decision dated July 27, 2005, the ALJ found that Plaintiff could perform a full range of light work. (TR 7-12). Accordingly, Plaintiff was found not disabled. (TR 12). On

---

[1] Plaintiff signed his application on May 14, 2003. (TR 50).

July 27, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (TR 4-6). Plaintiff then made this appeal to district court.

### A.  PLAINTIFF'S TESTIMONY

Plaintiff testified that he lives in Dearborn Heights in a rental home with his wife and their youngest child, a twenty-four year old son. (TR 286-87). He explained that his son is mentally impaired. (TR 287). Plaintiff testified that he has not worked since June 3, 2002. Id.

He explained that he worked for Yasaki North America until January 2003, when he was terminated. Id. He reported that he was terminated due to his back problems, which limited his job performance. Id. He stated that he could not lift boxes, bend, stand, or drive the forklift any more. (TR 293). He stated that he got along with everyone and was nominated twice for "United Way Unsung Hero." Id. He stated that he did file a worker's compensation claim as a result of problems on that job and settled a couple months prior to the hearing for $5000. (TR 293-94). Plaintiff stated that he has not filed any other worker's compensation claims, but has filed for unemployment compensation. (TR 294). Plaintiff stated that he filed for unemployment after being terminated by Yasaki for one year. Id. Plaintiff stated that he was aware that he had to make himself available for work while filing for benefits. Id.

He stated that he did not work for a year after Yasaki, but then he tried various jobs, all of which were unsuccessful. (TR 287). He stated that he drove an express van at Detroit Metro Airport, worked at a truck driving company, worked in a steel yard, and worked in security. Id. He stated that he also filed for unemployment after working at the scrap yard. (TR 294). He stated that he is no longer receiving benefits under same because he was only eligible for fourteen weeks. (TR 295). He stated that he was never sent out on any jobs while collecting unemployment benefits the first or second time. Id.

He testified that he drove the express van at the airport, delivering passengers and their luggage, for about a month, then left for a better paying job at a truck driving company, which did not work out. (TR 288, 289). He stated that he returned to the airport, but was terminated after one month, but was not told the reason for the termination. (TR 288-89). He explained that he was unable to perform the truck driving job because of his back. (TR 288). They wanted him to drive railroad yard trailers from Detroit to Chicago and back, five days a week. Id. He stated that legally he was prohibited from driving that far, and in addition, he was taking medication for his back which prohibited him from driving professionally according to the Department of Transportation. Id.

He stated that he then worked as a security guard for two months in a scrap yard. (TR 289). He stated that he quit that job, because he was only working thirty hours a week, and his back because aggravated from sitting too long. Id. In addition, he had to make rounds around the yard and "lost [his] footing quite a bit." Id. He stated that he stopped working as a security yard to work within the scrap yard warehouse full-time, which lasted two months, until he was terminated. (TR 289-90). He stated that he was injured on the job, and when the doctor released him to return to work, they fired him the following day. (TR 290).

When the ALJ asked him, Plaintiff explained that he would not be able to perform the airport job, because it required him to lift fifty to seventy-five pound luggage and move it in and out of the van. Id. He stated that this aggravated his back condition. Id. In addition, he reiterated that his medication impairs his ability to drive, because it makes him "groggy." Id.

Plaintiff testified that he takes medication for high cholesterol, high blood pressure, Lorcet, and two Valiums each day. Id. He reported that he takes the Valium for depression, as prescribed by his family physician, Dr. Kim Yu. Id. Plaintiff stated that he has been treating with Dr. Yu for about a year and a half, and she also prescribes his other medications. (TR 291). Plaintiff stated that he

3

has never treated with a mental health professional for his depression. Id. He stated that Dr. Yu recommended that he see a psychiatrist, but he has not done so yet. Id. Plaintiff stated that his medications help with his pain, and he can function. (TR 299).

He stated that he has received little treatment from Dr. Yu and mostly just sees her for his medication. (TR 291). He sees her once a month and has not seen other doctors while he treated with her. (TR 292). Prior to treating with Dr. Yu, Plaintiff testified that he treated with another family physician, Dr. Bekker, for eight years. Id. He admitted that doctors have recommended that he get treatment for substance abuse. Id. Plaintiff reported that he was abusing painkillers because he built up a tolerance to them. (TR 292, 293). He stated that Dr. Bekker would "just give [him] more and more." (TR 292). Plaintiff stated that he cannot remember abusing other substances. Id. When the ALJ reminded him, Plaintiff stated that he also used to use marijuana, but has not for about a year and a half. (TR 293). Plaintiff also then reported that he used to drink alcohol, but he quit between two and two and a half years ago. Id. He stated that his mother died from alcoholism at age fifty-eight. Id.

Plaintiff stated that in addition to his depression and back problems, he has eye and shoulder problems. (TR 295). He reported that he has had twenty-three different eye diseases in the past four years, including "iritis, conjunctivitis, caryatitis, and ubitis [phonetic]." Id. He stated that he does not think that his eye problems affected his job performance. Id. Plaintiff explained that his left shoulder was injured at Yasaki in 1999. (TR 296). He explained that he "fractured a bone in [his] rotator cuff," but it was mistakenly treated as a sprain for five months. Id. He stated that they never properly treated the fracture, because they said it was too late and sent him to his family physician. Id. Plaintiff stated that he is right-handed. Id.

Plaintiff testified that he can walk maybe one half mile and stand for five or ten minutes before he needs to sit. Id. He stated that he can sit for two or three hours at a time. Id. He stated that even though he can sit for that long, he was unable to do the security guard position, because his medication made him drowsy, and he was supposed to do rounds every hour. (TR 297).

Plaintiff described his current back problems: "three tip vertebrae, spurs, bulging disks, osteoarthritis, scoliosis, lumbago, and degenerative disk disease." Id. He stated that he suffers a lot of pain in his lower back and between his shoulder blades. Id. He stated that the pain is worse in his lower back, and it is constant. (TR 298). He stated that the pain is not sharp, but between dull and sharp, and best described as "nagging and irritating." Id. He stated that the pain is a seven or an eight with ten being unbearable pain. Id. Plaintiff stated that his lower back problems began in 1979 when he fell in the shower, hit his back on the edge of the bathtub, and his head hit the floor. (TR 299).

He stated that the pain between his shoulder blades is also constant and would be about a seven. (TR 298). He stated that the pain is sharper there than in his lower back. Id. He stated that his shoulder problem limits his lifting ability. (TR 299). Nonetheless, he stated that he can probably lift ten to fifteen pounds. Id. He stated that it also interferes with his sleeping, because he sleeps on his side, but now he has difficulty sleeping on his left side, which aggravates his "sleepless problem." Id. Plaintiff testified that he has sleep deprivation and sometimes goes three days without sleep. (TR 300). He stated that even when he sleeps, it is not constant, and he has to get up every one to two hours to use the bathroom, and he cannot fall back asleep for two hours. Id. He stated that he believes that his sleep problems result from a combination of his pain and his anxiety. Id. He stated that he does not sleep during the day. Id.

Plaintiff stated that on a typical day he does not do much of anything. Id. He stated that he sits on the couch and watches television. Id. He explained that he alternates between sitting and laying down on the couch. Id. He reported that once a week he tries to do some of the dishes, but he has to sit on a stool to do same. Id. He stated that he cannot stand to do the dishes because of the leaning forward and use of the arms. Id. He stated that he does not do any housework. (TR 301).

Plaintiff testified that he does not have any hobbies. Id. He reported that he used to ride motorcycles, but no longer can due to his back. Id. He stated that he does like to read science fiction novels. Id.

### B. MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C. VOCATIONAL EXPERT'S TESTIMONY

Susan Entenberg, a vocational expert [VE], testified at the hearing. (TR 302-03). She classified Plaintiff's past work as follows: warehouse forklift operator, heavy and semi-skilled; truck driver, heavy and semi-skilled; orderly, heavy and unskilled; bus driver, light and semi-skilled; van driver, medium to heavy, semi-skilled; second truck driving position, medium and semi-skilled; security guard, light and unskilled; and warehousing job, heavy and unskilled. Id. The VE testified that Plaintiff's skills from the semi-skilled driving positions would not be transferable to any sedentary jobs. (TR 303). In addition, the VE stated that the forklift driving position would not be transferable

---

[2]Subpart E, infra, at 7.

to light work because it is a medium job at best. Id. Plaintiff's counsel declined to question the VE. Id.

### D.     ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that the medical evidence establishes that the claimant has "discogenic and degenerative back and shoulder strains," which are considered "severe," but that he does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 8-9, 11). The ALJ found Plaintiff's testimony not fully credible. (TR 9 ,11). He determined that Plaintiff had the RFC to perform the full range of light work. (TR 10, 11). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 12).

### E.     ANALYSIS

Plaintiff advances several claims in his Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because (1) the ALJ failed to order a consultative examination; (2) the ALJ did not properly assess his credibility; (3) the ALJ's RFC is flawed; and (4) there is new and material evidence warranting remand.[3] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence.[4] The matter is now ready for decision.

---

[3]Plaintiff's Motion for Summary Judgment and Brief filed January 3, 2006 (hereinafter "Plaintiff's Brief"), at pages 6-15. See also Plaintiff's Reply Brief filed April 3, 2006 (hereinafter "Plaintiff's Reply").

[4]Defendant's Motion for Summary Judgment and Brief filed March 24, 2006 (hereinafter "Defendant's Brief"), at pages 4-9.

### 1.     Standard of Review

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2006). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

### a.     Consultative Examination

Plaintiff argues that the ALJ erred in failing to order a consultative examination regarding Plaintiff's mental health.[5] However, even though Plaintiff argues that an ALJ is obligated to look "fully into the issues," pursuant to 20 C.F.R. § 404.944; Plaintiff acknowledges that consultative examinations are discretionary.[6] Further, Plaintiff states that

> [i]n Landsaw v. Secretary of Health & Human Serv., 803 F.2d 211, 214 (6th Cir. 1986), the United States Court of Appeals for the Sixth Circuit held that a consultative

---

[5]Plaintiff's Brief at pages 9-11.

[6]Plaintiff's Brief at pages 9-10. Plaintiff states that "the ALJ *may* order a consultative examination when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled." Plaintiff's Brief at page 10 (citing Conley v. Bowen, 781 F.2d 143, 148 (8th Cir. 1986) (emphasis added).

examination may be required when the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.[7]

However, in <u>Landsaw</u>, the Sixth Circuit held that

> The burden of providing a complete record, defined as evidence complete and detailed enough to enable the Secretary to make a disability determination, rests with the claimant. 20 C.F.R. §§ 416.912, 416.913(d). Moreover, as the government argues, the regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination. 20 C.F.R. § 416.917(a).
> As to the ALJ's duty to conduct a "full inquiry," 20 C.F.R. § 416.1444, we adopt the following statement by the Fifth Circuit which applies equally to the present case and disposes of plaintiff's argument:
> "[F]ull inquiry" does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision.

<u>Landsaw</u>, 563 F.2d at 214. In addition, in <u>Foster v. Halter</u>, 279 F.3d 348, 355 (6th Cir. 2001), the court stated that

> [a]n ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary. 20 C.F.R. §§ 404.1517, 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.") (emphasis added); see <u>Landsaw v. Sec'y of Health & Human Servs.</u>, 803 F.2d 211, 214 (6th Cir.1986) ("[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.").

As the court in <u>Landsaw</u> and Defendant notes, the burden is on Plaintiff.[8] Further, as Defendant points out, there was a psychological evaluation done by the State of Michigan Disability Determination Service in July 2003.[9] In addition, there was a Psychiatric Review Technique [PRT]

---

[7]Plaintiff's Brief at page 10.

[8]Defendant's Brief at pages 6-7.

[9]Defendant's Brief at page 6 (citing 167).

form completed by a state agency psychiatrist.[10] Plaintiff argues that these are insufficient and that the July 2003 evaluation was connected to Plaintiff's worker's compensation claim.[11] However, it appears that Plaintiff may be confusing that consultation with the consultation of October 27, 200,3 by Dr. Nathan L. Gross. (TR 252-55).[12] Plaintiff also argues that the ALJ disregarded the portion of the PRT form finding that Plaintiff suffered from depression.[13] Although Dr. Pennington noted that there was a medical history of depression, Dr. Pennington's limitations were in no way related to Plaintiff's mental health. (TR 180-81).

The July 2003 consultation states the following: "Reason for Referral: Full Mental Status Examination by Psychologist." (TR 165). As for the PRT form and notes regarding depression, the ALJ unfortunately failed to address Plaintiff's depression relating to same. Nonetheless, the ALJ did note that Plaintiff "denied any feelings of depression, suicidal or homicidal ideations," to the consulting psychologist Dr. John Jeter, on July 29, 2003 (TR 10, 165-67).

Further, although there are notes of depression scattered throughout Dr. Yu's notes, on December 3, 2004 (the most recently dated treatment note[14]), Dr. Yu stated that Plaintiff's "[d]epression [was] better." (TR 272). Thus, there was no apparent need for a consultative

---

[10]Defendant's Brief at page 6 (citing TR 191-201).

[11]Plaintiff's Brief at page 10.

[12]It is noted by Dr. Gross that Plaintiff's past medical history shows depression, which conflicts with Plaintiff's denial of same three months earlier. (TR 253). In any event, "[a]ny conflict in the doctor's reports suggested by Plaintiff is not for the Court to decide. The Sixth Circuit has stated that it is not the responsibility of the Court 'to resolve conflicting evidence in the record.'" Wright v. Massanari, 321 F.3d 611, 614 (6th Cir.2003) (citation omitted).

[13]Plaintiff's Reply at pages 3-4.

[14]It is important to note that Plaintiff's testified that in fact, Dr. Yu provided little treatment and mostly served to renew his prescriptions. (TR 291).

examination regarding Plaintiff's mental health and more importantly it was in the ALJ's discretion to order same.

### b. Credibility

Plaintiff argues that the ALJ failed to properly assess his credibility.[15] The ALJ's credibility determination is analyzed under 20 CFR § 404.1529(c)(3). That regulation states that

> [w]hen determining credibility, in addition to the objective medical evidence, the ALJ must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3). Further, the regulations clearly set forth that "we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements." 20 CFR § 404.1529(c)(2). In addition, as Social Security Ruling (SSR) 96-7p points out, the ALJ's "determination or decision must contain specific reasons for the finding on credibility . . . to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."

---

[15]Plaintiff's Brief at pages 12-14; Plaintiff's Reply at page 4.

Plaintiff argues that the "the ALJ merely recites that '[t]he undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.'"[16]  Further, Plaintiff argues that "[t]he body of the decision, however, does not indicate which portions of the administrative transcript or Plaintiff's testimony that is not credible."[17]

However, the ALJ stated the following in assessing credibility:

> [t]he claimant reported that he completes his own grooming, hygiene, dressing and bathing activities independently.  Moreover, the claimant averred that he cleans the house, does laundry, shops for himself, drives and takes care of his impaired adult child (Exhibit 5F, p.2).  The claimant testified that he experiences constant back pain, which is nagging and somewhere between sharp and dull.  However, the claimant also testified that pain medication helps him function[.]

(TR 9).  Although he testified that his medication makes him drowsy, (TR 290, 297), Plaintiff does not argue that the ALJ failed to address possible side-effects.  Nonetheless, Plaintiff reported to the consulting psychologist that his "medication is taken complaint [sic] with no side effects."  (TR 165).

The standard is substantial evidence and it appears that the ALJ's credibility analysis is supported by same, even though this may be a close call.  The undersigned recognizes that

> after listening to what [claimant] said on the witness stand, observing his demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [claimant] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987).  Further, the "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference" (Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted)), and should not be disturbed.

---

[16]Plaintiff's Brief at page 13 (citing TR 11); Plaintiff's Reply at page 4 (citing TR 11).

[17]Plaintiff's Reply at page 4.

    c.  **RFC**

Plaintiff argues that the ALJ erred in assessing his RFC for a full range of light work.[18] Plaintiff argues that the ALJ also erred in his questions to the VE.[19] As far as the RFC is implicated in Plaintiff's argument, in Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 632 (6th Cir. 2004), the Court explained how the RFC and hypothetical work together.

> [W]hile the [residual functional capacity] should focus on [Plaintiff]'s abilities or, in other words, what [Plaintiff] can and cannot do, the hypothetical question should focus on [Plaintiff]'s overall state including [Plaintiff]'s mental and physical maladies. . . The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what [he] "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies.

Id. at 632-33 (citation omitted).

In the present case, the ALJ determined that Plaintiff had an RFC for light work and asked whether Plaintiff had transferable skills from his past relevant work to other light work. (TR 303). In response, the VE stated that the forklift operation was a medium position and not transferable to light. Id. Thus, there is no error in his question to the VE unless there is a lack of substantial evidence to support an RFC for light work.

Plaintiff argues that there is no RFC for light work due to Plaintiff's pain and worsening symptoms after activity, as documented in physical therapy notes (TR 170, 172), his testimony (TR 296), and a July 18, 2002 Physical Capacities Evaluation (TR 141). As to his testimony, this is a

---

[18]Plaintiff's Brief at page 14-15; Plaintiff's Reply at pages 1-3.

[19]Plaintiff's Brief at pages 14-15. Plaintiff also argues that the ALJ referred to the wrong VE; however, this appears to be an inadvertent typographical error ands as such is irrelevant to the issues presented. Plaintiff's Brief at page 14.

credibility issue and same has already been discussed by the undersigned.[20] In terms of the physical therapy notes, the ALJ reiterated that Plaintiff testified that his pain is lessened by medication, and he is able to function. (TR 9, 299). Likewise, the Physical Capacities Evaluation of July 18, 2002, stating that Plaintiff "is unable to work at present time due to chronic back pain which is not resolving with medication,"[21] is inconsistent with Plaintiff's own testimony that he can function on medication.[22] Id.

### d. Additional Evidence

Plaintiff argues that this case should be remanded pursuant to sentence six of 42 U.S.C. § 405(g) so that the ALJ may review a police report detailing Plaintiff's suicide attempt on August 11, 2005.[23] The Sixth Circuit has held that the Court does not have to review new evidence unless good cause has been shown and the new evidence is material. Cline v. Comm'r of Social Sec., 96 F.3d 146, 148 (6th Cir. 1996). In Cline, it was the claimant's

> primary argument [] that because the Appeals Council considered his new psychiatric evidence, the district court was required to do so as well. He is mistaken. In Cotton v. Sullivan, 2 F.3d 692, 695-96 (6th Cir. 1993), this court decided a case very much like Cline's, holding that where the Appeals Council considers new evidence but declines to review a claimant's application for disability insurance benefits on the merits, the district court cannot consider that new evidence in deciding whether to uphold, modify, or reverse the ALJ's decision. The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding. Id. at 696.

---

[20]Supra at 11-13.

[21]Further, the assessment states that Plaintiff is "unable to work @ *present* undergoing physical therapy," which implies that he may be able to work in the further. (TR 141) (emphasis added).

[22]On September 20, 2004, although unclear, it *appears* that Dr. Yu noted that Plaintiff needs an increase in exercise, including fast walking. (TR 270).

[23]Plaintiff's Brief at pages 11-12.

14

Id. "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." Foster, 279 F.3d at 357 (citing Willis v. Sec'y of Health & Human Servs., 727 F.2d 551, 554 (1984) (per curiam). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." Sizemore v. Sec'y of Health and Human Servs., 865 F.2d 709, 711 (6th Cir. 1988) (citing Carroll v. Califano, 619 F.2d 1157, 1162 (6th Cir. 1980)).

Additionally, Plaintiff has to establish "newness" pursuant to Sullivan v. Finkelstein, 496 U.S. 617, 626 (1990) (a sixth sentence remand is only "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding.") (citations omitted); Abbott v. Sullivan, 905 F.2d 918, 925 n.5 (6th Cir. 1990) (citation omitted).

It is clear that Plaintiff can establish "newness." The police report is dated August 11, 2005, two weeks after the ALJ's decision.[24] For the same reason, "good cause" is established. However, the issue of "materiality" is not so easily met. His suicide attempt is no doubt a mental health issue that needs attention; nonetheless, Plaintiff only attaches a police report, and as Defendant notes[25] Plaintiff attaches no accompanying medical records or mental health treatment notes since August 11, 2005. Plaintiff simply stated that "the evidence is material to the issue of Plaintiff's mental disability."[26] However, "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed

---

[24]Plaintiff's Brief at page 12.

[25]Defendant's Brief at page 7.

[26]Plaintiff's Brief at page 12. Plaintiff additionally argues that the additional evidence also justifies remand for a consultative examination. Id. However, it has already been determined by the undersigned that such an examination is not necessary. Supra at 8-11.

argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." McPherson v. Kelsey, 125 F.3d 989, 995-96 (6th Cir. 1997) (citations omitted). Plaintiff's Reply Brief was filed April 3, 2006, almost a full nine months after the suicide attempts, and Plaintiff fails to provide evidence of mental health treatment. Therefore, Plaintiff has not established that the evidence is review able and requires remand.

### III.    CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Summary Judgment, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objections within ten days. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

> s/Wallace Capel, Jr.
> **WALLACE CAPEL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

**Dated:** __August 16, 2006__

16

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on <u>August 16, 2006</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>Janet L. Parker and Daniel L. Pulter,</u>

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): <u>Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606</u>.

> s/James P. Peltier
> United States District Court
> Flint, Michigan 48502
> 810-341-7850
> E-mail: pete_peltier@mied.uscourts.gov